ADDISON C. BEACH, APPELLEE, V. E. L. REED ET AL.,
APPELLANTS.

FILED JUNE 23, 1898.   No. 8207.

1. **Homestead:** EXTENT AND VALUE.  A debtor's homestead exemption
   is limited in quantity to two contiguous lots in an incorporated
   city, town, or village; if outside such corporation, to 160 acres
   of land; and in either case, in value, to $2,000.

2. ———: LIEN OF JUDGMENT: MORTGAGE.  A money judgment of a
   district court becomes a general lien upon all the lands of the
   debtor in the county, at least, from the date of its rendition, and
   a mortgage executed upon such lands thereafter will not invest
   the mortgagee with a lien superior to the judgment for anything
   more than the debtor's homestead interest.

3. ———: FORECLOSURE OF MORTGAGE: REFORMATION OF DECREE:
   SHERIFF's DEED.  On the facts disclosed by the record *held* that
   a mortgagee who purchased the real estate sold at judicial sale
   to satisfy the decree foreclosing his mortgage was not entitled
   to have the foreclosure decree and sheriff's deed reformed so
   as to include therein lands not adjudged by the foreclosure de-
   cree to be subject to the lien of the mortgage.

APPEAL from the district court of Cass county.  Heard
below before CHAPMAN, J.  *Reversed.*

*E. H. Wooley,* for appellants.

*Beeson & Root, contra.*

RAGAN, C.

In December, 1889, E. L. Reed was the owner of con-
siderable real estate in Cass county, included in which
were certain lots, blocks, and irregular tracts in the town
of Weeping Water, upon one of which lots or tracts he
resided with his family.  In that month F. M. Gibson
recovered a judgment against Reed for something like
$6,000, which became a lien upon all the real estate of
Reed in said county, subject, however, to his rights of
homestead exemption.  In 1891 Reed, being indebted to
Addison C. Beach, executed to him a mortgage upon a

tract of land in said Cass county, described by metes and bounds, and being one of these blocks or tracts of land in the town of Weeping Water. Subsequently Beach brought a suit to foreclose this mortgage, making Gibson a party defendant. Gibson appeared and answered the petition of Beach, and claimed that his judgment was a first lien upon all the lands of Reed in said Cass county. Beach contended, among other things, that the mortgage given him by Reed was the first lien upon so much of Reed's real estate as constituted his homestead; and that the tract of land embraced and described in the mortgage constituted such homestead. The district court adopted Beach's contention and made findings that Beach's mortgage was a first lien upon the tract of land occupied by Reed as a homestead; that this tract of land was the one described in the mortgage from Reed to Beach; and that the tract of land described in the mortgage was in fact lot 14 of Reed's Addition to the city of Weeping Water, and entered a decree that Beach's mortgage was a first lien upon said lot 14, and ordering it sold to pay the amount found due Beach on the mortgage debt, which was something near $6,000. Reed stayed the execution of this decree for nine months, at the expiration of which time Beach caused the property described in the decree as lot 14 in Reed's Addition to the city of Weeping Water to be advertised and offered at public sale. At this sale Beach purchased the property, and after the sale was confirmed obtained a deed therefor and took possession thereof. In the execution or order of sale, in the appraisal proceedings, in the notice of the sale, in the sheriff's report of the sale, and in the sheriff's deed this property was described as in the decree, as being lot 14 in Reed's Addition to the city of Weeping Water. Subsequent to the entering of the mortgage foreclosure decree in favor of Beach, Gibson caused an execution to be issued and levied upon all the lands of Beach in said Cass county, except lot 14 in Reed's Addition to the city of Weeping Water. These lands were

duly appraised, advertised, and sold by the sheriff and purchased by Gibson, the sale confirmed, and a deed executed and delivered to him. After these two sales had been made it was discovered that a part of the building in which Reed resided was not on this lot 14 in Reed's Addition to the city of Weeping Water, and that some of the outbuildings used by Reed in connection with his homestead were not on said lot 14, and thereupon Beach brought this suit in the district court of Cass county, praying that the foreclosure decree rendered in his favor against Reed might be reformed so as to describe the lands, upon which the mortgage foreclosed in that case was a lien, by metes and bounds, following the description in the mortgage itself; and that the deed executed to him by the sheriff in pursuance of the sale had under the foreclosure decree might be reformed so as to convey to him the lands as described in his mortgage. On final hearing the court entered a decree as prayed, and Gibson has appealed.

We do not know of any principle of law or equity upon which this decree can stand. The decree entered in the mortgage foreclosure case which determined that Beach's mortgage was a first lien upon the land occupied by Reed as a homestead, and that that homestead was lot 14 in the town of Weeping Water, was not the result of either fraud or mutual mistake. The decree was so entered at the instigation of Beach and his counsel. By that decree Beach was given a first lien upon the entire tract of land upon which Reed resided. This tract of land embraced something more than four acres, and was worth at the time it was sold about $4,500, and was sold for $2,700, and Beach received the benefit of the sale. By the decree then entered as Beach asked to have it entered he obtained more than he was entitled to. Reed's homestead interest was limited, being in an incorporated village, in quantity to two contiguous lots and, in value, to $2,000. But by the decree property worth $4,500 was, at the instigation of Beach, decreed to be Reed's homestead, and

Beach v. Reed.

Beach's mortgage made a first lien upon this property. If Beach's mortgage was a first lien upon the homestead interest of Reed, the extent of that lien was $2,000. The decree, the order of sale, the notice of sale, the report of the sale, and the sheriff's deed having all been framed upon the theory that Beach's homestead was this lot 14, and so framed at the instigation of Beach, by becoming the purchaser at the sale at which this homestead was sold, he acquired all that he asked for in the foreclosure decree—all and more than he was entitled to under the law. That some of the outbuildings used by Reed were not actually upon this lot 14, and that some part of the house in which Reed resided was not on this lot 14, are wholly immaterial. By virtue of the judicial sale made in pursuance of the mortgage foreclosure decree Beach obtained all of lot 14 in Reed's Addition to the city of Weeping Water. This at his own instigation was declared and decreed to be Reed's homestead. It was his homestead, at least to the extent of $2,000 in value; but Beach, by virtue of the decree of the court in the mortgage foreclosure case and the sale which occurred in pursuance thereof, acquired this entire homestead of the value of $4,500. This he still has, and so far as this record discloses he proposes to retain, and by this proceeding seeks to have other property that once belonged to Reed added to it. Beach has already received about $2,500 worth of property out of the Reed estate to which he was not entitled; and if the property he purchased at the judicial sale did not have upon it all the buildings which he thought were upon it, we do not know of any principle of equity that authorizes the courts to make good to a purchaser at judicial sale the loss he may sustain which results from his own laches. The decree of the district court is reversed and the proceeding is dismissed.

REVERSED AND DISMISSED.